# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BEVERLY CLARK O/B/O
MATTHEW MIMS,

        Plaintiff,                    CIVIL ACTION NO. 06-CV-14812

  vs.

                                              DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Defendant's Motion for Summary Judgment should be GRANTED and Plaintiff's Motion for Summary Judgment should be DENIED, as there was substantial evidence on the record to support the Administrative Law Judge's decision to deny Social Security Supplemental Security Income.

\*\*\*

Plaintiff is now an eighteen year old adult male. His mother, Beverly Clark, filed an application for Social Security Supplemental Security Income (SSI) childhood disability benefits on his behalf on March 31, 2003 alleging that he had been disabled since March 1, 2003 due to a learning problem, asthma with shortness of breath, chest pains and headaches (TR 13, 36). The Social Security Administration denied benefits (TR 18). A requested *de novo* hearing was held on January 3, 2006, before Administrative Law Judge (ALJ) Regina Sobrino, who subsequently found that the claimant was not entitled to disability benefits (TR 12). Claimant's mother and claimant testified at the hearing. In a decision dated June 2, 2006 the ALJ determined that the claimant was

not entitled to childhood disability benefits because he did not have an impairment or combination of impairments that meets, medically equals or functionally equals any of those found in the Listing of Impairments (TR 12). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review (TR 3-6). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of childhood Supplemental Security Income was supported by substantial evidence on the record.

Plaintiff's mother testified at the administrative hearing that her son suffers from asthma and he sees a doctor every month because of the asthma. She testified that he takes Advair, Sinular and Albuterol (TR 114). Claimant was not sworn in (TR 14, 104). However, Plaintiff was questioned by the ALJ. Plaintiff stated that he had his medicines with him and carries his inhaler at school. He also told the ALJ that he uses his inhaler before and after gym class and when he gets "out of breath." (TR 115). He further responded that his mother helps him keep track of his medicines (TR 114). He said that math is his favorite subject, however he has trouble independently buying items at a store because he would not know if he got the correct change back from a purchase (TR 107, 113). Plaintiff stated that he likes to look at magazines (TR 108).

Plaintiff's mother testified that Plaintiff does not sleep "like he's supposed to" and he sleeps most of the day, including during class (TR 116). He then wakes up at 2:00 or 3:00 a.m. and it is difficult for him to get back to sleep (TR 118). When he finally falls back asleep at 3:00 or 4:00 a.m. he ultimately oversleeps for school (TR 118). She testified that she took him to a sleep lab and he has a "sleeping disease." (TR 118). She says "his grades are not as good as they are supposed to be" and he failed the seventh grade twice (TR 117). Both the Plaintiff and his mother testified that he cannot read well (TR 111, 119). Plaintiff and his mother also testified that Plaintiff does not have

any friends (TR 109-10, 120). The only household chore Plaintiff does is to take out the garbage three or four times a week (TR 123).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

After finding that the claimant had never performed substantial gainful activity, the ALJ determined that he was indeed impaired as a result of a learning disorder and asthma, severe impairments, but that these problems did not meet or medically equal any of those found in the Listing of Impairments (TR 16). Moreover, the ALJ found that the claimant's impairments did not "functionally equal" the Listing because he did not have an impairment or combination of impairments that resulted in marked and severe functional limitations.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this court to try cases *de novo*, or resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts").

**DISCUSSION AND ANALYSIS**

    **A.    ELIGIBILITY FOR SSI CHILDHOOD DISABILITY BENEFITS**

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(I). To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three step sequential evaluation process:

> 1. A child will be found "not disabled" if he engages in substantial gainful activity.
>
> 2. A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.
>
> 3. A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416.924(a)-(d) (2007).

To determine whether a child's impairment(s) functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a)(2003). The SSA will consider how a child functions in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Heath and physical-being.

20 C.F.R. 416.926a(b)(1).

If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain,[1] the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. 416.926a(d).

B.     NON-COMPLIANCE WITH SCHEDULING ORDER

As an initial matter, Defendant argues that Plaintiff has not complied with the Court's scheduling order which required him to file his motion for summary judgment on or before January 29, 2007. This point is moot because the undersigned issued an Amended Scheduling Order dated March 27, 2007 which set a new deadline to file the motion for summary judgment on or before April 27, 2007. Plaintiff filed his motion for summary judgment on April 13, 2007.

---

[1] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation is one that "interferes very seriously with [a child's] ability to independently sustain or complete activities." 20 C.F.R. § 416.926a(e)(3).

## C. ALJ DECISION SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD

The issue is whether there was substantial evidence in the record to support the ALJ's decision denying the application for Supplemental Security Income. Plaintiff's mother contends in the Motion for Summary Judgment that Plaintiff has a mental condition that renders him unable to "do things in a decent manner." Plaintiff's assertion is analogous to alleging a marked limitation in Plaintiff's ability in one or more of the six areas of functioning.

In this matter, Plaintiff submitted with his Complaint dated February 28, 2007 a Psychological Evaluation from November 2006 and a list of his treating physicians. In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 685 (6th Cir. 1993). Furthermore, under 20 C.F.R. § 404.970(b), "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." The ALJ decision is dated June 2, 2006 and was based on a prior Psychological Evaluation. The newly submitted November 2006 Evaluation and list of physicians was not submitted to the Appeals Council, nor is there any indication that any of this material relates to the period of time prior to the ALJ's decision. Furthermore, Plaintiff makes no showing that this new information is material, nor does he show good cause for the failure to submit it earlier. Consequently, the new evidence Plaintiff submitted with his Complaint was not considered by the undersigned.

The ALJ properly found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment in the Listings. The record lacks medical

support for Plaintiff's alleged impairments. However, there is substantial evidence in the record to support the ALJ's finding that the Plaintiff did not have a disability meeting or medically equal to the Listing. The Childhood Disability Evaluation Form from January 2004 indicates that Plaintiff's "impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the Listings." (TR 63).

The ALJ analyzed whether Plaintiff's impairment or combination of impairments functionally equals the Listings. The ALJ found that Plaintiff had less than marked impairment in acquiring and using information (functional domain no. 1) (TR 15). In 2003, Plaintiff's reading skills were at a third grade level and his math skills were at a fourth grade level (TR 65, 70, 76, 78). A psychological evaluation administered to Plaintiff in February 2003 showed that his IQ is within the range of intelligence functioning (TR 79). The Test Results stated that Plaintiff "obtained a Full Scale IQ score of 93, which places him in the range of intelligence functioning. His Verbal score of 93, as well as his Performance score of 94, both place him in the average range for those particular groups of tests." (TR 79). However, the Psychological Evaluation summary stated that there was "a severe discrepancy between ability and achievement in the areas of reading and spelling." (TR 80). An Individualized Education Program completed for Plaintiff in March 2003 and Plaintiff was recommended for 30 hours of special education per week (TR 74).

The ALJ found that there was no indication of significant limitations in Plaintiff's ability to attend to and complete tasks (functional domain no. 2). The Psychological Evaluation summary from February 2003 stated that Plaintiff "was cooperative throughout the assessment." (TR 79). The ALJ also noted that there was no indication in the record of problems with attention span (TR 15). The Court agrees.

The ALJ found that there was no indication that Plaintiff had impairments in interacting and relating with others (functional domain no. 3) (TR 15). This conclusion is also supported by substantial evidence in the record. In the October 2003 Daily Activities report Plaintiff's mother indicated that Plaintiff is able to answer the phone and deliver phone messages, repeat stories and explain why he did something (TR 52). She stated that he has one friend that he gets along with "most of the time" and that Plaintiff goes to church or to the friend's house to play games (TR 51 and 60). He also gets along with his brothers and sisters although they are "not that fund (sic) of each other" and Plaintiff sometimes argues with the younger siblings (TR 51).

There is no evidence in the record that Plaintiff has marked limitations in moving about and manipulating objects (functional domain no. 4). Plaintiff stated that he has never tried to lift anything heavy, however he participates in gym class with the use of his inhaler (TR 114-15). He also completes the chores of taking out the garbage and cleaning his room and he plays video games (TR 60, 110, 123).

Likewise, there is no evidence in the record that Plaintiff has marked limitations in caring for himself (functional domain no. 5). There is substantial evidence in the record that Plaintiff is able to perform self-care tasks (TR 52, 59). His mother testified that he chooses his own clothes to wear each day and dresses himself (TR 122). Plaintiff testified that he carries his inhaler at school and uses it as necessary (TR 115). In the October 2003 Daily Activities report Plaintiff's mother indicated that Plaintiff is able to care for his personal needs including bathing, dressing and toileting (TR 52). The March 2003 Individualized Education Program information form states that Plaintiff's "daily living skills are age appropriate." (TR 71).

Finally, the ALJ found that Plaintiff had no marked impairment in the area of health and physical well being (functional domain no. 6) (TR 15). This is consistent with the record. Plaintiff was diagnosed with asthma in March 2001 (TR 58). Plaintiff manages this condition with medications and an inhaler (TR 37, 55, 56). On the Asthma Form, Plaintiff's mother notes that he suffered an asthma attack requiring treatment in March 2003 (TR 49). However, the ALJ noted that there was no indication in the record of emergency room visits for asthma (TR 15). Other than Plaintiff's mother's assertion regarding a March 2003 asthma attack, there are no medical records before the Court that support such an assertion. This is consistent with the ALJ's determination. Plaintiff also complains of chest pains and is allergic to nuts (TR 45). The record indicates that Plaintiff went to the emergency room in April 2003 as a result of an allergic reaction to eating chocolate and/or shock tarts (TR 82-85).

There are some discrepancies between the October 2003 and April 2004 Daily Activities reports and Plaintiff's mother's testimony at the ALJ hearing. For instance, in the October 2003 Daily Activities report, Plaintiff's mother indicated that he sometimes does his own laundry, although he needs some directions (TR 54). At the hearing she was asked whether Plaintiff knew how to do the laundry and she testified that he does not and that she does not have him wash anything (TR 123). In the Daily Activities reports Plaintiff's mother indicated that Plaintiff has one friend (TR 51, 60). At the hearing she testified that he does not have any friends (TR 120).

The ALJ's decision to deny benefits is based on substantial evidence in the record. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted, and the instant Complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 20, 2007        s/ Mona K. Majzoub
                              MONA K. MAJZOUB

UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Matthew Mims, Beverly Clark and Counsel of Record on this date.

Dated: August 20, 2007